OPINION
{¶ 1} Patricia Stinnett is appealing the judgment of the Clark County Court of Common Pleas which granted summary judgment in favor of the City of Springfield, David Lutzweit, and Springfield City Schools.
 {¶ 2} On March 22, 1999, Patricia Stinnett got into a car accident with Doug Hoagland in the parking lot of a Domino's Pizza. Ms. Stinnett asserts that Mr. Hoagland backed into her car and was at fault. Ms. Stinnett called her insurance company and then subsequently called the police. Officer Lutzweit responded to the scene. Officer Lutzweit informed Ms. Stinnett and Mr. Hoagland that he would not file a police report because the accident occurred on private property and that he could not be a witness to the incident as he had not seen the accident. Ms. Stinnett became angry at his refusal to file a police report. According to Officer Lutzweit, Mr. Hoagland, and Mr. Perrin and Mr. Virts, who observed part of the incident, Ms. Stinnett became angry and began yelling and cursing at the officer for not writing a report. Additionally, Officer Lutzweit gave Mr. Hoagland a business card, from which Ms. Stinnett inferred that the officer was biased against her. At this point, Ms. Stinnett decided to leave and she walked away towards her car. Officer Lutzweit called to her and was attempting to get her name in order to determine if they were both valid drivers. Officer Lutzweit opened the door to Ms. Stinnett's vehicle and ordered her to get out because he was arresting her for disorderly conduct. According to Ms. Stinnett, she cooperated and got out of the vehicle and allowed the officer to arrest her. However, Officer Lutzweit reported that Ms. Stinnett resisted being arrested and continued to yell at him and push him while he was trying to place her under arrest. Therefore, Officer Lutzweit also arrested and charged her with resisting arrest. These charges were subsequently dropped.
 {¶ 3} During the 1997-1998 school year, Ms. Stinnett was employed by the Springfield City Schools as a long term substitute teacher. However in April of 1998, Ms. Stinnett was sent a notice informing her that the school board had chosen not to renew her long-term substitute assignment, which she signed. Then, Ms. Stinnett was offered and accepted a position as a casual day to day substitute teacher for the 1998-1999 school year. According to the school district, upon learning of the criminal charges pending against Ms. Stinnett, the coordinator for substitute services for the school district notified Ms. Stinnett that the school board would not be delegating substitute teaching assignments to her while the criminal charges were pending. The coordinator further states that upon receiving this information, Ms. Stinnett asked to have her name removed from the school district's list of available substitutes. Ms. Stinnett asserts that the school board terminated her upon learning of the criminal charges pending against her.
 {¶ 4} On March 13, 2000, Ms. Stinnett brought this action against the City of Springfield and Officer Lutzweit for wrongful termination and false arrest and against the Springfield City Schools for wrongful termination and the denial of due process rights. On September 7, 2001, the City of Springfield and Officer Lutzweit filed a motion for summary judgment. On October 9, 2001, Springfield City Schools filed a motion for summary judgment. The trial court granted Springfield City Schools, the City of Springfield, and Officer's Lutzweit's motion for summary judgment. Ms. Stinnett has filed this appeal from that judgment.
 {¶ 5} Ms. Stinnett raises two assignments of error:
 {¶ 6} "1. THE TRIAL COURT ERRED IN GRANTING DEFENDANT DAVID A. LUTZWEIT'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE TRIAL COURT DID NOT VIEW THE EVIDENCE MOST STRONGLY IN FAVOR OF THE PLAINTIFF, AS IS REQUIRED BY RULE 56(C) OF THE OHIO RULES OF CIVIL PROCEDURE.
 {¶ 7} "2. THE TRIAL COURT ERRED IN GRANTING DEFENDANT SPRINGFIELD CITY SCHOOLS' MOTION FOR SUMMARY JUDGMENT BECAUSE THE TRIAL COURT DID NOT VIEW THE EVIDENCE MOST STRONGLY IN FAVOR OF THE PLAINTIFF, AS IS REQUIRED BY RULE 56(C) OF THE OHIO RULES OF CIVIL PROCEDURE."
Standard of Review:
 {¶ 8} When a motion for summary judgment is reviewed on appeal, the appellate court reviews the district court's opinion de novo. In order to prevail on a motion for summary judgment, the movant must show that (1) there are no genuine issues of material fact; (2) the movant is "entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse" to the nonmoving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 8 O.O.3d 73; Ohio Civ.R. 56(C). The movant bears the initial burden of demonstrating no genuine issues of material fact exist concerning an essential element of the nonmoving party's case. Dresherv. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The movant party must inform the court of the basis for the motion and identify portions of the record which support his claim. Vahila v. Hall, 77 Ohio St.3d 421, 430,1997-Ohio-259. Civ.R. 56(E) provides that the nonmoving party has a reciprocal burden to point to the record where specific facts establish a genuine issue of material fact. Id. All doubts must be construed in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360, 1992-Ohio-95. However, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
Appellant's first assignment of error:
 {¶ 9} Ms. Stinnett argues that the trial court erred in granting the City of Springfield's motion for summary judgment because she raised a genuine issue of material fact as to whether the City had a policy against placing officers who were unfit on active duty and violated this policy by placing Officer Lutzweit on active duty. Also, Ms. Stinnett argues that the trial court erred in granting Officer Lutzweit's motion for summary judgment because she raised a genuine issue of material fact as to whether the officer had probable cause to arrest her since both she and the officer had different versions of the event. We disagree.
 a. Summary Judgment for the City of Springfield {¶ 10} In determining whether a municipal defendant is liable under Section 1983, the municipality or county is not liable unless:
 {¶ 11} "The plaintiff must be able to `identify a governmental `policy' or `custom' that caused the plaintiff's injury,' and the municipality through this policy must have been the `moving force' behind the injury alleged. (citation omitted) The violation may be visited pursuant to governmental `custom' even though such a custom has not received formal approval through the body's official decision-making channels. (citation omitted) However, the custom must be `permanent and well settled [so] as to constitute a custom or usage with the force of law.' (citation omitted) The notion of law must include `deeply embedded traditional ways of carrying out state policy,' and reflect a course of action deliberately chosen from among various alternatives. (citation omitted)." Ford v. County of Oakland (C.A. 6 May 13, 2002), 2002 U.S. App. LEXIS 9472.
 {¶ 12} Additionally, a municipality is not liable on a deliberate indifference standard for failure to supervise and discipline unless there is a showing of history of widespread abuse that the City has ignored. Secot v. City of Sterling Heights, 985 F. Supp. 715, 719
(1997).
 {¶ 13} Ms. Stinnett argues that the trial court erred in determining that she had not pointed to a custom or policy of the City of Springfield through which she was injured. Ms. Stinnett asserts that she offered a report of a Detective Ayers drafted as a result of Ms. Stinnett's complaint which stated that Officer Lutzweit's supervisors should monitor his "emotional and physical state to ensure that he is emotionally fit for duty." Detective Ayers continued on to note that there seems to be an "ongoing problem in these areas" and that Officer Lutzweit should be evaluated periodically to make sure that he is fit for duty. From this report, Ms. Stinnett argues that the City of Springfield failed to follow official policy or custom by permitting Officer Lutzweit to remain on active duty despite doubts about his fitness for duty. However, the report does not demonstrate this.
 {¶ 14} Initially, we must note that the report was drafted as a result of the incident between Ms. Stinnett and Officer Lutzweit, and does not reveal that the City of Springfield was aware of a problem with Officer Lutzweit prior to the incident with Ms. Stinnett. Therefore, the report does not amount to evidence that the City of Springfield was aware that Officer Lutzweit was not fit for duty and continued to place him on active duty. At most, the report would suggest that after the incident with Ms. Stinnett, the City of Springfield questioned Officer Lutzweit's fitness.
 {¶ 15} Additionally, in order to raise a claim under Section 1983 against the City of Springfield, Ms. Stinnett must point to a policy or custom of the City of Springfield which caused her injury. Rather, Ms. Stinnett alleges that the City of Springfield failed to follow its policy of only putting officers who are fit for duty on active duty. Thus, she argues that she was injured by the City not following its policy which resulted in Officer Lutzweit, who she asserts was unfit for duty, being placed on active duty where he subsequently arrested her. Therefore, Ms. Stinnett does not point to a policy or custom of the City of Springfield which resulted in her injury but instead the failure to follow a policy on one occasion which caused her injury. This is insufficient to support a Section 1983 claim.
 {¶ 16} Moreover, Ms. Stinnett argues that the City of Springfield violated her due process rights secured under the Fourteenth Amendment to the U.S. Constitution, due to its failure to adequately supervise Officer Lutzweit. However, Ms. Stinnett has failed to offer any evidence that the City of Springfield has a history of widespread abuse in its failure to supervise and discipline police officers as is necessary to make the City of Springfield liable under a deliberate indifference standard for failure to supervise. Thus, we agree with the trial court and find that no genuine issues of fact remain for determination and the trial court did not err in granting summary judgment for the City of Springfield.
 b. Summary Judgment for Officer Lutzweit {¶ 17} When addressing qualified immunity for police officers, if officers of reasonable competence could disagree as to the lawfulness of the conduct, the immunity should be recognized. Malley v. Briggs (1986),475 U.S. 335, 341. Where police officers have reasonable but mistaken beliefs establishing the existence of probable cause, they will not be found to have violated the U.S. Constitution. Saucier v. Katz (2001),533 U.S. 194, 205. Police officers still maintain immunity for reasonable mistakes as to the legality of their actions. Id. The U.S. Supreme Court has determined that reasonableness is a question of law to be decided by the trial judge. Hunter v. Bryant (1991), 502 U.S. 224, 227-228. Additionally, the U.S. Supreme Court has stressed the importance of resolving immunity questions at the earliest possible stage of litigation. Saucier, supra at 200-201. However, if there is a factual dispute "on which the question of immunity turns, `such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights,'" summary judgment on the issue of qualified immunity should not be granted. Sigley v. Kuhn (C.A. 6 2000), 205 F.3d 1341, 2000 U.S. App. LEXIS 1465, * 13.
 {¶ 18} Ms. Stinnett argues that the trial court erred in granting summary judgment in favor of Officer Lutzweit where a genuine issue of material fact remained on the issue of whether there was probable cause to arrest her. Ms. Stinnett argues that Officer's Lutzweit's report of the events differs from her version of events as alleged in her complaint and thereby creates a genuine issue of material fact as to whether there was probable cause to arrest her. Officer Lutzweit stated in his report that Ms. Stinnett was loud and cursing when he informed her that he could not write up a police report for her. He then reported that she entered her vehicle and started to leave the scene when Officer Lutzweit was attempting to get her name in order to check if she had a valid operator's license. Officer Lutzweit then asked Ms. Stinnett to get out of the vehicle as he was arresting her for disorderly conduct. Similarly, Ms. Stinnett asserted in her complaint that she became upset at Officer Lutzweit's behavior and walked away from him refusing to give him her name and got into her car. Ms. Stinnett stated that Officer Lutzweit then approached her car and asked her to get out, informing her that he was placing her under arrest for disorderly conduct.
 {¶ 19} Mr. Hoagland, the other party in the accident with Ms. Stinnett, stated in his report that Ms. Stinnett "had an attitude" and appeared to be having a bad day prior to the officer's arrival. Moreover, he stated that she "kept after" Officer Lutzweit to write a report on the incident and would not leave him alone. Additionally, Mr. Hoagland stated that Officer Lutzweit attempted to give her his business card but that Ms. Stinnett told him he was prejudiced and walked away. Mr. Hoagland stated that Ms. Stinnett was walking to her car when Officer Lutzweit was attempting to get her name, but Ms. Stinnett refused to give him her name because he would not write a report. Also, Michael Virts, a witness to the incident, stated that Ms. Stinnett was yelling at Officer Lutzweit about not writing a report and then got in her car despite the officer asking for her name three to four times. Further, he stated that Officer Lutzweit was attempting to calm Ms. Stinnett down even though she was yelling. Additionally, Mr. Perrin, another witness to the incident, stated that Ms. Stinnett became upset when Officer Lutzweit gave Mr. Hoagland one of his business cards and left to get in her car, even though the officer was asking for her name.
 {¶ 20} Therefore, all the witnesses as well as Officer Lutzweit and Ms. Stinnett agree as to what occurred prior to Ms. Stinnett being asked to get out of the car because she was under arrest for disorderly conduct. However, Ms. Stinnett and Mr. Lutzweit do disagree as to what occurred after this point and what led to the subsequent charge of resisting arrest. It is this dispute as to the subsequent facts which Ms. Stinnett asserts creates a genuine issue of material fact for a jury. Under the U.S. Constitution, a person may be placed under arrest for even a minor misdemeanor, such as disorderly conduct. Atwater v. Cityof Lago Vista (2001), 121 S.Ct. 1536. Therefore, Ms. Stinnett could be arrested for disorderly conduct if Officer Lutzweit had probable cause to believe she committed the offense.
 {¶ 21} However, Officer Lutzweit need only show that no genuine issues of material fact remained as to whether he had qualified immunity for his actions. In order to be entitled to qualified immunity, Officer Lutzweit must show that a reasonable police officer in the situation with Ms. Stinnett on March 12, 1999 could have believed that arresting her for disorderly conduct was permitted under the law. The reports of the witnesses, Officer Lutzweit, and Ms. Stinnett establish that Ms. Stinnett was extremely upset at Officer Lutzweit for not writing a report of the car accident and that in anger she walked away from him refusing to give him her name despite the fact that he repeatedly asked her for it. Moreover, Ms. Stinnett's anger and upset is more fully described by Officer Lutzweit and witnesses as yelling and cursing, particularly in a relentless manner. Ms. Stinnett did not submit an affidavit or other evidence contradicting this description of events, choosing instead to rely on her brief description of the incident in her complaint. We cannot find that a genuine issue of material fact exists regarding Ms. Stinnett's angry and yelling behavior prior to her arrest and removal from the car. Further, we cannot say that the trial court erred in determining that a reasonable police officer would have believed Officer Lutzweit to be lawful in arresting Ms. Stinnett for disorderly conduct due to her angry and yelling behavior. Therefore, we agree with the trial court that no genuine issue of material fact remains as to whether Officer Lutzweit had qualified immunity and summary judgment in the officer's favor was appropriate. Appellant's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 22} Ms. Stinnett argues that the trial court erred in granting the Springfield City Schools' motion for summary judgment when she had raised a genuine issue of material fact as to whether she was a long term substitute teacher and whether she was terminated rather than resigned. We disagree.
 {¶ 23} R.C. 3319.11(E) provides:
 {¶ 24} ". . . Any teacher employed under a limited contract, . . . is, at the expiration of such limited contract, considered reemployed under the provisions of this division . . . unless evaluation procedures have been complied with . . . and the employing board, acting upon the superintendent's written recommendation that the teacher not be reemployed, gives such teacher written notice of its intention not to reemploy such teacher . . .
 {¶ 25} "Any teacher receiving written notice of the intention of the board not to reemploy such teacher pursuant to this division is entitled to the hearing provisions of division (G) of this section."
 {¶ 26} R.C. 3319.11(G) states:
 {¶ 27} "(1) Any teacher receiving written notice of the intention of a board of education not to reemploy such teacher pursuant to division . . . (E) of this section may, within ten days of the date of receipt of the notice, file with the treasurer of the board a written demand for a written statement describing the circumstances that led to the board's intention not to reemploy the teacher.
 {¶ 28} "(2) The treasurer of a board, on behalf of the board, shall, within ten days of the date of receipt of a written demand for a written statement . . . provide to the teacher a written statement describing the circumstances that led to the board's intention not to reemploy the teacher.
 {¶ 29} "(3) Any teacher receiving a written statement describing the circumstances that led to the board's intention not to reemploy the teacher pursuant to division (G)(2) of this section may, within five days of the date of receipt of the statement, file with the treasurer of the board a written demand for a hearing before the board pursuant to divisions (G)(4) to (6) of this section."
 {¶ 30} Appellant points to several cases and argues that a teacher under a limited teacher contract has a right to a written statement explaining the board's reasons underlying its decision to end the teacher's contract and the circumstances which led to the decision. Kielv. Green Local Schools Dist. Bd. of Ed., 69 Ohio St.3d 149,1994-Ohio-21; Naylor v. Cardinal Local School Dist. Bd. of Educ.,69 Ohio St.3d 162, 1994-Ohio-22; Geib v. Triway Local School Dist. Bd. ofEduc., 84 Ohio St.3d 447, 1999-Ohio-463; Hunt v. Westlake City SchoolDist. (1995), 100 Ohio App.3d 233. However in Kiel, Naylor, Geib, andHunt, the teachers all either did not receive written notice or requested written explanation for nonrenewal of their services upon receipt of the notice. Id.
 {¶ 31} The Ohio Supreme Court has established three factors to distinguish a long term from a casual substitute teacher: (1) whether or not the substitute is assigned to replace specific teachers for clearly defined periods of time; (2) whether or not classroom assignments vary from day to day; and (3) whether the substitute is paid on a daily basis or according to a regular teacher's pay schedule. State ex rel. Dennisv. Bd. of Educ. of the Hillsdale Local School Dist. (1986),28 Ohio St.3d 263, 266. However, a casual day to day substitute teacher is not entitled to any notice of nonrenewal by virtue of her status as casual substitute teacher. Id.
 {¶ 32} Ms. Stinnett argues that the trial court erred in determining that she was a casual day to day substitute and that she resigned, rather than was terminated. Ms. Stinnett argues that in the 1997-1998 school year she was a long term substitute teacher and that she was not properly notified of the nonrenewal of her contract. Ms. Stinnett argues that since she was not properly notified of the nonrenewal, she was still a long term substitute teacher in the 1998-1999 school year. Thus, Ms. Stinnett argues that she was a long term substitute teacher rather than a casual day to day substitute teacher when she claims to have been terminated in the spring of 1999.
 {¶ 33} However, Springfield City Schools submitted with their motion for summary judgment an affidavit of Linda Paul, the administrative secretary for the coordinator for substitute services for the school district, who stated that Ms. Stinnett was sent a letter notifying her of the school board's decision not to renew her long-term substitute teacher position. Attached to the affidavit was the letter notifying her of the decision not to renew which was signed and dated when received by Ms. Stinnett. Ms. Stinnett argues that she should have received a written statement explaining the reasons underlying the decision to not renew her contract and the circumstances which led to the decision. However pursuant to R.C. 3319.11(G), the school board need only have provided her with an explanation if she requested one within ten days of having received the notice. Ms. Paul's affidavit asserted that Ms. Stinnett never requested such an explanation nor does Ms. Stinnett claim to have made such a request. As Ms. Stinnett failed to comply with R.C. 3319.11(G) procedures for an explanation, we cannot say that Springfield City Schools failed to properly notify her of the nonrenewal of her long term substitute teacher contract. Therefore, we cannot say that the trial court erred in determining that Ms. Stinnett was a casual day to day substitute teacher when she claims to have been terminated in 1999. Since Ms. Stinnett was a casual day to day substitute teacher she was not entitled to any notice of nonrenewal when she claims to have been terminated in 1999.
 {¶ 34} Further the affidavit of Ms. Paul asserts that she informed Ms. Stinnett in 1999 that due to the pending criminal charges against her, the school district would not place her as a substitute while the charges were pending. Ms. Paul also asked Ms. Stinnett to inform her when the pending charges were resolved. Ms. Paul states in her affidavit that Ms. Stinnett then requested that she remove her name from the school's list of available substitute teachers, which Ms. Paul did. Therefore, Springfield City Schools assert that Ms. Stinnett resigned and was not terminated. Yet, Ms. Stinnett claims in her complaint that she was terminated. However, in response to Springfield City Schools' motion for summary judgment with the attached affidavit of Ms. Paul, Ms. Stinnett did not respond with any evidence from the record but instead chose to rely on the allegations in her complaint. This was insufficient to create a genuine issue of material fact and we cannot say that the trial court erred in determining that Ms. Stinnett resigned from her position as a casual day to day substitute teacher. Therefore, we cannot say that the trial court erred in granting the Springfield City Schools' motion for summary judgment. Appellant's second assignment of error is without merit and is overruled.
 {¶ 35} The judgment of the trial court is affirmed.
WOLFF, P.J. and BROGAN, J., concur.