**Harold SECOT, Plaintiff,**

v.

**The CITY OF STERLING HEIGHTS and Sergeant Richard Frohm, Defendants.**

No. CIV. A. 96–40410.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 10, 1997.

**MEMORANDUM OPINION AND ORDER**

GADOLA, District Judge.

This case involves claims under 42 U.S.C. § 1983. Plaintiff, Harold Secot, alleges that he was struck on the hand with a police baton while participating in a strike at the Detroit Newspaper Agency plant in Sterling Heights, Michigan on August 19, 1995. Plaintiff brought suit against the City of Sterling Heights (the "City") and Sergeant Richard Frohm alleging that they deprived him of his rights under the First and Fourth Amendments to the United States Constitution.

Before the court are the following three motions: (1) motion by the City for summary judgment; (2) motion by Sgt. Frohm for summary judgment; and (3) defendants' objections to the order of Magistrate Judge Komives denying a separate or bifurcated trial. For the reasons set forth below, this court will: (1) grant the motion by the City for summary judgment; (2) grant the motion by Sgt. Frohm for summary judgment in part; and (3) dismiss the objections to the magistrate judge's order denying a separate or bifurcated trial as moot.

**Factual Background**

In early 1995, the Sterling Heights Police Department learned of a potential strike between the Detroit Newspaper Agency and its labor unions. In anticipation of the strike, the police department took various steps including appointing an officer to the post of strike coordinator, as well as bringing two Detroit police officers, Sgts. William Jones and Bob Nill, to give a training session to Sterling Heights police officers on crowd control techniques.

On August 19, 1995, a large group of striking union members and their supporters gathered at the Sterling Heights newspaper plant. The police had adopted the practice during the strike of maintaining a presence, but only requiring strikers to clear the driveways leading in and out of the plant once every hour to allow traffic to pass. However, on August 19, 1995, the strikers had refused to allow any traffic to pass in or out of the plant for the 8:00 p.m. deployment. Captain James Owens of the Sterling Heights police department advised the picketers that they could not continue to obstruct traffic, and that officers would be dispatched from across the street at 9:00 p.m. to clear a path in the driveway. At approximately 9:20 p.m., Captain Owens announced to the protestors via a loudspeaker that police would be coming across the street, and that the picketers would have to clear a space in the driveway. A short time later, a group of officers in full riot gear, including defendant, Sgt. Frohm,

crossed the street and met with the crowd of protestors near the driveway.

In the fray that ensued, plaintiff was struck by a police baton. Plaintiff claims to have been standing calmly in the crowd without doing anything to engage the officers or the others around him. Plaintiff did not immediately see which officer struck him, but later identified Sgt. Frohm out of a series of photographs as that officer. Sgt. Frohm denies ever having used his baton that night.

Plaintiff filed suit against Sgt. Frohm and the City of Sterling Heights alleging violations under 42 U.S.C. § 1983.[1] Count I of plaintiff's complaint alleges that Sgt. Frohm violated plaintiff's right to be free from the use of excessive force under the Fourth Amendment. Count II alleges that Sgt. Frohm violated plaintiff's right to freedom of speech under the First Amendment. Count III alleges that the City of Sterling Heights is liable under 42 U.S.C. § 1983 because it had a custom, policy and practice of allowing its officers to use excessive force against and to deny free speech rights to striking workers. The City of Sterling Heights filed its motion for summary judgment on September 8, 1997. Sgt. Frohm filed his motion for summary judgment on September 11, 1997. Magistrate Judge Komives entered an order denying defendants' motion for a separate and bifurcated trial on August 29, 1997, and defendants filed objections to that order on September 15, 1997.

## Discussion

### A. The motions for summary judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essen-

tial element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liber-*

---

1. Plaintiff also asserted various state law claims which this court dismissed by order dated January 8, 1997.

*ty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986):

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### 1. The City's motion for summary judgment

Both parties agree that municipalities may not be subjected to liability under § 1983 merely on the basis of respondeat superior. *See Monell v. Department of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, local governments may only be sued for damages under § 1983 when:

the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer. Moreover, ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's decision making channels.

*Id.* at 690–91, 98 S.Ct. at 2035–36. In other words, the action complained of must "fairly be said to represent the official policy [of the municipality]." *Id.* at 694, 98 S.Ct. at 2037–38. In addition, the challenged policy must be the "moving force" behind the constitutional deprivation. *See Searcy v. City of Dayton,* 38 F.3d 282, 287 (6th Cir.1994).

In this case, the bulk of plaintiff's claims against the City rest on a theory that the City did not adequately train its officers in crowd control techniques. Specifically, plaintiff alleges that at the training sessions conducted in May, 1995, Sgts. Jones and Nill showed how to use police batons against opponents, but did not give any instruction on *when* to use force. Plaintiff asserts that the absence of any discussion of when using force would be appropriate amounts to inadequate training of the officers in preparation for the strike.

The United States Supreme Court dealt with the limited circumstances in which a municipality can be held liable under § 1983 for inadequate training of its police officers in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In that case, the Court held that liability only attaches if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 389, 109 S.Ct. at 1204. The Court further clarified the deliberate indifference standard in *Board of County Comm'rs of Bryan County v. Brown,* ——— U.S. ———, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In *Brown,* the Court held:

If a program does not prevent constitutional violations, municipal decision makers may eventually be put on notice that a new program is called for. Their *continued adherence* to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference'—necessary to trigger municipal liability.

*Id.* at ———, 117 S.Ct. at 1390 (emphasis added).

In support of his claim that there was an existing policy or custom of using batons against strikers to deprive them of constitutional rights, plaintiff relies mainly on the events of August 19, 1995. However, without more, this will not support a finding that the municipality was aware of deficiencies in its training and yet continued to adhere to its faulty approach. Plaintiff comes forth with no specific evidence of a deprivation of con-

stitutional rights of striking workers prior to August 19, 1995. There is also no evidence that any striking worker filed any complaint with the police department complaining of abusive conduct. As such, the evidence does not support a claim that the municipality was deliberately indifferent to the rights of striking workers.

Plaintiff relies heavily on *Canton*, which provides that a plaintiff might succeed in carrying a failure to train claim without showing a pattern of constitutional violations, in limited circumstances. The Court in *Canton* held:

> But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the City may be held liable if it actually causes injury.

*Canton*, 489 U.S. at 390, 109 S.Ct. at 1205 (footnotes omitted). The Supreme Court clarified its meaning in *Brown*. In that case, the Court noted, "we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Brown*, —— U.S. at ——, 117 S.Ct. at 1391.

What distinguishes this case from the situation contemplated by the Supreme Court in *Brown* and *Canton* is that the City did attempt to give its officers supplemental training in the face of the impending strike. The City brought in outside consultants and implemented a detailed plan to handle the strike. It is not as if the City turned a blind eye to the coming strike and did nothing to prepare its officers for possible altercations. On the contrary, the City took extra precautions.

Moreover, the City has submitted an affidavit from Chief of Police Thomas R. Derocha in which he cites General Order No. 6.23, which contains the Sterling Heights Police Department's standing policy on the use of non-deadly force. The order provides, in part:

> It is the policy of the Sterling Heights Police Department that officers use only the *minimum* amount of force necessary to effect an arrest, to defend themselves or others, or to gain control in any instance where the use of force is authorized by law.

(City's br., Ex. 3). This and the other standing orders of the police department would still apply to officers handling the strike. As the City correctly points out in its reply brief, "Whether a municipality's training program is the best and most comprehensive available has no bearing on whether the City's conduct rises to the level of deliberative indifference, nor is it sufficient to prove that an injury could have been avoided if an officer had better or more training." (City's reply br., p. 3) (citing *Walker v. Norris*, 917 F.2d 1449, 1456 (6th Cir.1990); *Lewis v. City of Irvine*, 899 F.2d 451, 455 (6th Cir.1990)). Here, the City quite possibly could have provided more comprehensive training, but the training it did provide certainly shows it did not exhibit deliberate indifference to the rights of workers engaged in the strike. This conclusion is strengthened by the fact that plaintiff brings forth no substantial evidence that the rights of other striking workers were violated and/or that the City was aware of such conduct.

This court also notes that, to the extent plaintiff has fashioned an argument based on the City's failure to supervise and discipline its officers, the deliberate indifference standard is the same. *See Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir.1994) ("In the failure to discipline context, it is appropriate to apply the deliberate indifference standard adopted by the Supreme Court in *Canton* ... to require a showing of a history of widespread abuse that has been ignored by the City."). Again, because the plaintiff has come forth with no substantial evidence that the City was aware of excessive force being used in connection with this strike, plaintiff is unable to support a claim that the City showed deliberate indifference.

As a result, this court will grant the City's motion for summary judgment, as the plaintiff is unable to establish a claim against the City for a violation of § 1983 as a matter of law.

### 2. Sgt. Frohm's motion for summary judgment

Sgt. Frohm bases his motion for summary judgment primarily on a claim that he is entitled to assert the defense of qualified immunity in this case, which would entirely shield him from liability under § 1983.[2]

■ Government officials who perform discretionary functions are entitled to qualified immunity from civil suits for damages arising out of the performance of their official duties as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). A claim of qualified immunity depends on whether the defendant's conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Id.* at 638–40, 107 S.Ct. at 3038–39; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

To defeat a motion for summary judgment based on a claim of qualified immunity in the Sixth Circuit, a plaintiff must establish two things. First, the allegations must state a claim of the violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law. *See Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994).

With respect to the alleged use of excessive force in violation of the Fourth Amendment, this court finds that plaintiff has met his burden and can overcome the claim that, as a matter of law, Sgt. Frohm is entitled to assert the defense of qualified immunity. As held by the Sixth Circuit in *Adams*, the right to be free from the use of excessive force

under the Fourth Amendment is a clearly established right. *See id.* at 386–87 (citing *Graham v. Connor*, 490 U.S. 386, 392–93, 109 S.Ct. 1865, 1869–70, 104 L.Ed.2d 443 (1989)). Once plaintiff clears this hurdle, the issue is whether "plaintiff has alleged specific facts supported by sufficient evidence to indicate what [the officer] allegedly did was objectively unreasonable in light of these clearly established constitutional rights." *Id.* at 387.

On plaintiff's version of the facts, supported by his deposition testimony, affidavits from other witnesses and photographic evidence, he was standing peacefully in the picket line, holding a sign very close to his chest with one hand while his other hand was in his pocket. Plaintiff claims that he took special care to avoid doing anything threatening or making any movements toward any of the police officers. Plaintiff alleges that, for no reason, Sgt. Frohm struck him with a baton on the hand and lower arm, injuring him. Plaintiff argues that if the jury were to adopt this view of the facts, then they would be entitled to find that the actions of Sgt. Frohm were objectively unreasonable under the circumstances present at the time.

■ Sgt. Frohm argues first that plaintiff has failed to show that the right alleged to be violated was "clearly established" prior to August of 1995 because the plaintiff has not produced any authority specifically holding that "a police officer violated the Fourth Amendment by a single baton strike to the hand of a protestor where the protestor is part of a violent crowd blocking a driveway and assaulting police." Sgt. Frohm argues that plaintiff is obligated to produce such authority to show that the right was clearly established at the time of the alleged incident.

In response, plaintiff correctly points out that the rule endorsed by the Supreme Court is not that "an official action is protected by qualified immunity unless the very action in question has been previously held unlaw-

---

2. Sgt. Frohm also asserts that the claim under the First Amendment is materially deficient even if qualified immunity does not apply. However, because this court will dispose of plaintiff's First Amendment claim on qualified immunity grounds, it need not address that argument. *See* discussion, *infra*. Sgt. Frohm bases his motion for summary judgment as to the Fourth Amendment claim entirely on the defense of qualified immunity.

ful...." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. Rather, the rule is that the unlawfulness must be readily apparent to the officer at the time of the incident. *Id.* On plaintiff's account of the facts, supported by substantial evidence, Sgt. Frohm struck plaintiff while he was peaceably standing in the picket line and not threatening an officer or other member of the public in any way. Viewed from the standpoint of an objectively reasonable officer, there is sufficient evidence to support a finding that such conduct would be clearly unreasonable, thus precluding Sgt. Frohm from claiming qualified immunity as to the Fourth Amendment claim.

Sgt. Frohm argues next that it is stipulated that there was chaos in the area of the plant that night. As a result, Sgt. Frohm claims that his use of the baton that night was objectively reasonable. However, whether the defendant was reasonable in using the baton on this plaintiff in light of the facts claimed by both sides is a matter of some dispute. The fact that plaintiff has supported his version of the events with deposition testimony, affidavits from other witnesses and photographic evidence creates an issue ripe for jury submission. As provided by the Sixth Circuit in *Adams*, in most cases, "[i]t is the province of the jury, not the court, to decide on the credibility of the defendant's account of the need for force." *Adams*, 31 F.3d at 387.

As the plaintiff properly points out, a summary judgment based on a qualified immunity defense is not appropriate in a § 1983 action "if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity turns...." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988). *See also Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir.1989); *Yates v. City of Cleveland*, 941 F.2d 444 (6th Cir. 1991). Accordingly, because there appears to be such a genuine issue of material fact in this case, this court will deny Sgt. Frohm's motion for summary judgment with respect to the Fourth Amendment claim.[3]

However, as to the First Amendment claim, plaintiff has not met his burden to overcome the assertion of qualified immunity by Sgt. Frohm. Again, plaintiff must show first that the allegations state the violation of clearly established law. It is clear that the right to freedom of speech under the First Amendment is clearly established, which is sufficient to meet this first prong under *Adams*. However, plaintiff must also come forth with evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law. Here, plaintiff has not met this burden.

In order to prove a violation of the First Amendment in this case, plaintiff must show that Sgt. Frohm would not have engaged in this conduct (that is, striking the plaintiff with the baton) *"but for* the police officer's intent to interfere with [plaintiff's] freedom of speech." *Tatro v. Kervin*, 41 F.3d 9, 18 (1st Cir.1994) (emphasis in original). Here, plaintiff has brought forth no evidence to suggest that Sgt. Frohm was at all motivated by a desire to curb the plaintiff's freedom to convey his message. Plaintiff argues simply that he was engaged in speech activity when he was struck by Sgt. Frohm, and that there "remains an issue of fact as to whether or not defendant's actions were motivated by his desire to curb or interfere with plaintiff's First Amendment [rights]." However, this misunderstands the burden imposed on plaintiff to overcome a motion for summary judgment. Plaintiff must come forth with evidence substantial enough to require submission to a jury. Plaintiff has come forth with no such evidence here, and as a result, this court will accept Sgt. Frohm's assertion of the defense of qualified immunity with respect to the First Amendment claim as a matter of law.

Accordingly, this court will grant Sgt. Frohm's motion for summary judgment with respect to the First Amendment claim.

**B. Objections to the denial of motion for separate or bifurcated trial.**

Because this court will grant the City's motion for summary judgment, the objec-

---

3. Again, the motion for summary judgment with respect to the Fourth Amendment claim is based entirely on an assertion of the defense of qualified immunity. Sgt. Frohm offers no other basis on which a motion for summary judgment can be granted with respect to the Fourth Amendment claim.

tions to the order denying a separate or bifurcated trial will be dismissed as moot.

## Conclusion

Accordingly, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by defendant, City of Sterling Heights, on September 8, 1997 is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendant, Sgt. Richard Frohm, on September 11, 1997 is **DENIED** as to Count I of plaintiff's March 17, 1997 second amended complaint, and **GRANTED** as to Count II of plaintiff's March 17, 1997 second amended complaint.

**IT IS FURTHER ORDERED** that Counts II and III of plaintiff's March 17, 1997 second amended complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the September 15, 1997 objections filed by defendants to the August 29, 1997 order of Magistrate Judge Komives denying defendants' motion for separate or bifurcated trial are **DISMISSED** as moot.

**SO ORDERED.**

### *PARTIAL JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues involving defendant, City of Sterling Heights, having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff, Harold Secot, take nothing in this action against defendant, City of Sterling Heights, and that Count III of his March 17, 1997 second amended complaint be **DISMISSED** with prejudice.

**SO ORDERED.**